UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BEYEL BROTHERS, INC.,

    Plaintiff,

v.                                        Case No:   6:14-cv-62-Orl-36TBS

One commercial barge known as
BARGE # 1504, it tackle,
equipment, apparel,
appurtenances, tenders, etc., in
rem; One
commercial barge known as "BIG
SCOOP," it tackle, equipment,
apparel, appurtenances, tenders,
etc., in rem; One motor vessel
known as ALOISE, her engines,
tackle, equipment, apparel,
appurtenances, tenders, etc., in
rem; and ABYSS MARITIME,
INC., in personam,

    Defendants.

## AMENDED REPORT AND RECOMMENDATION

The following motions are pending before this Court:

1. Emergency Motion for an Order to Show Cause Why the Arrests Should not be Vacated, Request for a Hearing, and Memorandum of Law, filed by Defendant Abyss Maritime, Inc. ("Abyss") (Doc. 23);

2. Emergency Motion for Hearing and to Set Bond for Vessels and Equipment Release and Memorandum of Law, filed by Abyss (Doc. 24); and

3. Motion for Interlocutory Sale of *In Rem* Defendant Equipment and Incorporated Memorandum of Law, filed by Plaintiff Beyel Brothers ("Beyel") (Doc. 46).

Following a May 1, 2014 evidentiary hearing I issued my Report and

Recommendation recommending that these motions be granted in part and

denied in part.  (Doc. 67).  The parties filed their objections and responses to my Report and Recommendation and after due consideration, I concluded that some of their points are well taken.  Accordingly, I withdrew my Report and Recommendation (Doc. 80) and now enter this Amended Report and Recommendation in its place.

## Background

Beyel repairs maritime vessels and equipment at its yard in Brevard County, Florida.  Abyss is in the excavation business.  In the past, Beyel has repaired vessels and equipment for Abyss, and both parties were satisfied with the transactions.  The parties have no contracts, their usual course of dealing was for Beyel to make repairs, submitting invoices as the work progressed, which Abyss paid.  Beyel is currently in possession of the following vessels and equipment, all of which belong to Abyss:

The barge Big Scoop was delivered to Beyel on October 5, 2013 for repairs to make it seaworthy.  (Tr. 24).  Abyss anticipated the repairs would take two months and cost between $600,000 and $700,000.  (Tr. 24-26).  The work was never completed and the Big Scoop currently occupies a substantial part of Beyel's property.  The current fair market value of the Big Scoop, based upon an insurance appraisal, is approximately $300,000.  (Tr. 91).

Abyss purchased the barge #1504 from Beyel for $165,000.  (Tr. 33-34).  Including repairs, Abyss has $305,000 invested in barge #1504.  (Tr. 34).  The barge is currently taking on water in one compartment, and the fair market value, based upon an insurance appraisal, is approximately $200,000.  (Tr. 62, 86, 90).

The total amount of Beyel's claim attributable to barge #1504 is $14,000.  (Tr. 9, 131).

The tug Aloise, which according to Abyss' president, has a current fair market value of approximately $100,000.  (Tr. 34).  The total amount of Beyel's claim attributable to the Aloise is $35,161.35 of which $8,040 is for dockage rental and storage accrued prior to the arrest of the vessel.  The remainder of Beyel's claim is for post-arrest charges.  (Tr. 132, 175-176).

A decommissioned excavator known as the DEMAG.  It includes a long reach which would cost $1,000,000 if newly built.  The uncontradicted testimony of Abyss' president places the current fair market value of the DEMAG at approximately $500,000. (Tr. 41).

A Liebherr R974 (the "974") excavator.  This machine was delivered to Beyel's yard where it was assembled and made operational.  (Tr. 35).  The 974 was never attached to, or made a part of, any of the vessels in this case.  The president of Abyss testified that the 974 it is not ship's equipment, and the president of Beyel testified that while he understood Abyss intended to use the 974 on a project in Jamaica, he did not know any of the particulars.  (Tr. 114, 134).  The current fair market value of the 974 is $350,000.  (Tr. 34-35).  There is no evidence of any amount due from Abyss to Beyel in connection with the 974.  (Id.).

A Liebherr 994-200 (the "994") excavator.  This machine was delivered to Beyel where it was assembled and made operational.  Abyss paid $450,000 for the 994 and made approximately $400,000 in improvements.  (Tr. 37). The uncontradicted testimony of the president of Abyss places the current fair market

value of the 994 at approximately $1,000,000.  (Tr. 38).  Beyel claims Abyss owes it $13,156.76 on the 994.  (Tr. 167-168).

Four boxes containing turbidity curtains that are typically deployed where land based excavation will occur.  (Tr. 38, 72).  The curtains were brought in on a truck and remain on land.  (Tr. 7, 38).  There is no evidence that the curtains were ever attached to, or made a part of, any of the vessels.  The current fair market value of the boxes and curtains is unknown.

Both parties understood Beyel would be performing work on the Big Scoop, the Aloise, the DEMAG, the 974 and the 994.  But, they had no written agreement on the scope of the work, the time for completion, or the total cost. (Tr. 40, 78, 138, 195).

Beyel commenced work and began invoicing Abyss in mid to late November, 2013. (Tr. 26, 50).  Abyss paid some of the charges while disputing many others. (Id.).  It complained that Beyel was double billing it, charging for work not performed, and billing work at the wrong rate.  (Tr. 30, 76).  The parties' attempts to resolve these disputes were unsuccessful and on January 14, 2014, Beyel filed this lawsuit for breach of maritime contract (Count I), in rem relief against the Big Scoop, barge #1504, and Aloise (Count II), and quantum meruit against Abyss (Count III).  (Doc. 1).[1]  Beyel alleged that when the lawsuit was filed, Abyss owed it $698,398 – an amount which has increased with the accrual of storage charges.  (Id.).  At the hearing, Abyss admitted owing Beyel approximately $400,000 which it said it has not paid because the parties have not

---

[1] On January 23, 2014, Plaintiff filed a Verified Complaint that supersedes the original complaint. See (Doc. 10).

- 4 -

agreed on the total amount due.   (Tr. 56-57).

On January 31, 2014, the Court directed the issuance of a warrant of arrest in rem of the Big Scoop, barge #1504, the Aloise, and their engines, tackle, equipment, apparel, appurtenances, tenders, etc., plus the three excavators and the boxes of turbidity curtains.   All of these items have been arrested.   (Doc. 14; Doc. 15; Doc. 16; Doc. 17).   The Court appointed Beyel to serve as substitute custodian of the property.   (Doc. 14).   Abyss has attempted to obtain by bond, individual items but Beyel will not agree to anything but a single bond for the release of all the vessels and equipment.   (Doc. 24 at 3).   On February 20, 2014, Abyss petitioned the Court to vacate the arrests and to set bond for release of the arrested vessels and equipment.   (Doc. 23; Doc. 24).   Beyel subsequently motioned the Court for authority to sell the vessels and equipment.   (Doc. 46).

## Discussion

1. Request to Vacate the Arrests or in the Alternative, Set A Reasonable Bond

Abyss argues that Beyel has acted in bad faith by submitting false invoices and refusing a reasonable resolution of this dispute.   (Doc. 23 at 2).   It also argues that it has offered $40,000 in full payment of the amount Beyel claims is due on barge #1504, but Beyel has refused the offer.   (Doc. 24 at 4).   Abyss maintains that the Court lacks *in rem* jurisdiction over the three excavators, and the boxes containing the turbidity curtains.   (Id.).   For these reasons, Abyss is asking the Court to vacate the entire arrest; vacate the arrest as it pertains to the excavators, boxes and turbidity curtains; or set reasonable bonds for the arrested equipment.   (Doc. 23; Doc. 24).

By law, "[a] plaintiff may obtain arrest of the vessel or other property that is the subject of his or her action by filing an in rem complaint with the clerk of the District Court in which the action is brought." 2 Am. Jur. 2d Admiralty § 168 (2014). Federal Rule of Civil Procedure Supplemental Rule C directs the court to "issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property" if the "conditions for an in rem action appear to exist." FED. R. CIV. P. SUPP. R. (C)(3)(a)(i); M.D. Fla. R. 7.03. Supplemental Rule E(4)(f) provides that whenever property has been arrested, "any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." FED. R. CIV. P. SUPP. R. E(4)(f); M.D. Fla. R. 7.03((g). In the event of a Rule E(4)(f) post-arrest hearing, the arresting party bears the burden of showing that the arrest was proper and that "exigent circumstances existed." FED. R. CIV. P. SUPP. R. (C)(3)(a)(ii).

The scope of a maritime lien (and relatedly, the equipment that can be subject to arrest) includes the vessel, as well as its apparel, fixtures, and appurtenances. Canaveral Port Auth. v. M/V Liquid Vegas, Imo No. 8222941, Case No. 6:09-cv-01447-JA-DAB, 2009 WL 3347596, at *4 (M.D. Fla. Oct. 15, 2009) (citing Southwest Washington Prod. Credit Ass'n v. O/S New San Joseph, 1977 AMC 1123 (N.D. Cal. 1977)). "[T]he test of whether certain equipment on a vessel is an 'appurtenance' subject to a maritime lien is whether a specifically identifiable item is destined for use aboard a vessel and is essential or necessary to the vessel's 'operation or mission.'" Id. at *4-5. Courts have held that,

> The concept of appurtenance, therefore, is not limited to items essential to the vessel's navigation or mechanical functioning, but includes other property supporting her mission and voyage. Further, to be appurtenant to a vessel, the item need not be attached to or installed on the vessel, nor does the item actually have to lie onboard the vessel at the time of its arrest.

Id. at *5 (citing The Great Canton, 1924 AMC 1074, 1075 (S.D.N.Y.1924)). "A court obtains *in rem* jurisdiction over a vessel when a maritime lien attaches to the vessel." Industris Nacional Del Papel, C.A. v. M/V Albert F, 730 F.2d 622, 625 (11th Cir. 1984).

By rule, the court may require that the arrested property be released upon payment of a special bond. FED. R. CIV. P. SUPP. R. (E)(5)(a); M.D. Fla. R. 7.05. The court should fix a bond that is sufficient to cover plaintiff's claim, fairly stated, with accrued interest and costs but, the principal sum of the bond should not exceed the lesser of twice the value of the claim, or the value of the property. FED. R. CIV. P. SUPP. R. (E)(5)(a).

### a. Claim of Bad Faith

Abyss has accused Beyel of overcharging and double billing it for the work that was performed. At the hearing, Abyss estimated the total amount of overcharges at $268,000. (Tr. 80). What Abyss proved is that Beyel is claiming a double charge of $4,800. (Tr. 56-57). On Beyel's claim for dockage and storage charges both parties admit they failed to memorialize their dockage/storage and fuel agreement in writing and proceeded according to their prior course of dealing. (Tr. 66, 68, 138). The evidence does not establish what that course of dealing was in this circumstance. What has been

established is that it was Beyel's standard practice to not charge clients dockage and storage fees as long as the repairs and related payments progressed in a reasonable fashion.  See (Tr. 109).  Whether Beyel's standard practice applies in this case remains to be seen.  While the evidence persuades me that Beyel's invoices contain errors, there is not sufficient evidence at this juncture to support a finding that Beyel has acted arbitrarily or maliciously, or that its claim is baseless, unscrupulous, or unconscionable.  Therefore, I respectfully recommend the Court find that Abyss has not proven bad faith on the part of Beyel.

### b. Big Scoop and DEMAG

Initially, there was an issue about whether the DEMAG should be included as equipment of the Big Scoop. (Doc. 24 at 7).  At the hearing, Abyss "concede[d] that [the DEMAG] can be kept with the Barge Big Scoop as its equipment."  (Tr. 5).  The parties agree that Beyel has performed work on the Big Scoop for which it has not been paid.  Accordingly, I respectfully recommend that the district court deny the motion to vacate the arrest of the Big Scoop and the DEMAG.  I also respectfully recommend that the district court grant the motion to permit Abyss to post a bond for this property.  The unrebutted evidence shows that the combined value of the Big Scoop and DEMAG is $1,000,000.  (Tr. 41).  This is less than twice the total amount claimed by Beyel. Therefore, I respectfully recommend that the district court set a $1,000,000 special bond for the release of the Big Scoop and DEMAG.

### c. Barge #1504

Abyss has failed to carry its burden of showing that the arrest of the barge #1504 was improper.  Therefore, I respectfully recommend that the district court allow Abyss to post a special bond in the amount of $14,000 to cover the principal amount of Beyel's claim, to secure the release of this vessel.  I have not included any amount for interest, storage, or other charges because those amounts were not established by evidence at the hearing.

### d. Tug Aloise

Abyss has failed to carry its burden of showing that the arrest of the Aloise was improper.  Beyel's total claim against the Aloise at the time of the arrest was $8,040.  Therefore, I respectfully recommend that the district court allow Abyss to post a special bond in the amount of $16,080 which is twice the amount of Beyel's pre-arrest claim and less than its current total claim to secure the release of the Aloise.

### e. Liebherr 994

The greater weight of the evidence shows that Abyss intended to transport the 994 to Jamaica on a vessel that is not the subject of this litigation.  (Tr. 70, 79). Once in Jamaica, Abyss intended to put the 994 on the Big Scoop or some other barge.  (Tr. 66, 69-70, 134).  When the 994 was arrested, it was not attached to the Big Scoop and it had not otherwise been identified as the equipment of any vessel.  (Tr. 36).  Therefore, I respectfully recommend the district court find that it lacks *in rem* jurisdiction over the 994 and grant Abyss' motion to vacate this part of the arrest.

### f. Liebherr 974

There is no evidence that the 974 was ever placed on any of the arrested

vessels, or that it is apparel, a fixture, or appurtenance of the any of the arrested vessels. (Tr. 35, 71, 114, 134). Therefore, I respectfully recommend that the district court find that it lacks *in rem* jurisdiction over the 974 and grant Abyss' motion to vacate this part of the arrest.

### g. Boxes and Turbidity Curtains

The boxes are shore-based equipment that were never placed on any of the vessels. (Tr. 38, 135). There is no evidence that the boxes or the turbidity curtains inside the boxes were ever intended to be used aboard any of the vessels or that they were "essential or necessary to [any] vessel's 'operation or mission.'" See Canaveral Port, 2009 WL 3347596, at *4-5. Accordingly, I respectfully recommend that the district court find that it lacks *in rem* jurisdiction over the boxes and the turbidity curtains and vacate this part of the arrest.

### 2. Request to Conduct an Interlocutory Sale of *In Rem* Equipment

Supplemental Rule E(9) provides that,

> [T]he court may order all or part of the property sold – with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court – if:
> 
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> 
> (B) the expense of keeping the property is excessive or disproportionate; or
> 
> (C) there is an unreasonable delay in securing release of the property.

FED. R. CIV. P. SUPP. R. (E)(9)(a)(i); see also M.D. FLA. R. 7.05.

Beyel has moved for the interlocutory sale of the Big Scoop, barge #1504, and the Aloise, together with all of their tackle, equipment, apparel, and

appurtenances.  (Doc. 46).   It argues that Abyss has repeatedly promised to pay, but has not yet paid its debt.  (Id. at 4).   Beyel also maintains that the parties agreed to cancel the original bond hearing because Abyss promised a resolution of the issues, but failed to follow through.  (Id.).   Beyel asks the Court to order the interlocutory sale because it believes Abyss "cannot or will not post a bond in the amount of the Plaintiff's claim, fairly stated, plus interest . . ." (Id. at 5).

Abyss argues that the motion should be denied because Beyel "fails to attach or argue any value for all the equipment it seeks to sell, nor any appraisal information nor any evidence to support a sale under Rule E of the Supplemental Rules."   (Doc. 54 at 1).   Abyss also argues that the total value of the equipment being held for bond is $2,100,000 and there is "little evidence" of the cost of keeping this equipment during the pendency of this litigation, or evidence that the cost is "disproportionate."   (Doc. 72 at 7). If the Court accepts this Amended Report and Recommendation then the equipment will be valued and the appropriate bond amounts will be established.

Abyss maintains that it has "offered reasonable bonds for the equipment, which were refused."   (Id. at 2).   If the Court adopts and approves this Amended Report and Recommendations, then individual bonds for the equipment that is subject to being bonded, will have been established.

If the Court decrees the sale of the equipment then Beyel seeks the ability to credit bid the amount owed to it at any sale of the equipment.   The amount due from Abyss to Beyel has not been established.   In the absence of satisfactory proof of the indebtedness, I respectfully recommend the Court deny Beyel's request to make a credit bid.   Beyel should be required to bid in cash, or

alternatively, post a bond to secure payment of its bid, if it is the highest bidder at the sale.

Navar, Inc., claims a perfected security interest in the shore based equipment (Doc. 47), and Noranda Aluminium, Inc., claims a preferred security interest and mortgage in the Big Scoop. (Doc. 48). The validity, priority, and amount of these claims has not been established. Title 46 U.S.C. § 31326(a) provides that when a vessel is sold pursuant to order of the district court in a civil action to enforce a maritime lien, then any claim in the vessel which existed on the date of the sale is terminated so that the vessel is sold free of all liens. With certain exceptions, the terminated claims continue in existence, in the same amounts and with the same priorities, against the proceeds of the sale. 46 U.S.C. § 31326(b). If the Court orders a sale of the equipment, then I respectfully recommend that it find that the claims of Navar, Inc., and Noranda Aluminum, Inc., attach to the proceeds of the sale.

Upon due consideration, I respectfully recommend that the district court give Abyss sixty (60) days to bond any vessels and equipment it seeks. At the end of the sixty days, if any vessels or equipment remain, then I respectfully recommend that the Court order that they be sold to satisfy Beyel's claim.

### Recommendation

Now, I respectfully recommend that:

1. On the Emergency Motion for An Order to Show Cause Why the Arrests Should not be Vacated, Request for a Hearing, and Memorandum of Law, filed by Abyss (Doc. 23), the Court,

    a. **Grant** the motion to the extent it seeks to vacate the arrest of the Liebherr 974, the Liebherr 994-200, the four boxes, and the turbidity curtains.

    b. **Deny** the motion in all other respects.

  2. On the Emergency Motion for Hearing and to Set Bond for Vessels and Equipment Release and Memorandum of Law, filed by Abyss (Doc. 24), the Court,

    a. **Deny** the motion to the extent it asks the Court to set a bond for the Liebherr 974, Liebherr 994-200, four boxes, and turbidity curtains.

    b. **Grant** the motion in all other respects, and require the bonds recommended in this report.

    c. **Grant** Defendant Abyss **sixty (60) days** leave to bond for any equipment it seeks to have released.

  3. **Grant** the Motion for Interlocutory Sale of *In Rem* Defendant Equipment and Incorporated Memorandum of Law, filed by Plaintiff Beyel Brothers (Doc. 46), **but only after Abyss has had sixty days within to post a bond or bonds**. It is also recommended that Beyel be required to submit a cash bid, or post a bond to secure the amount of its bid, should it be the winning bidder. And, it is recommended that the to-be-turned claims of Navar, Inc., and Noranda Aluminum, Inc., attach to the proceeds of the sale.

  Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and

from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on July 24, 2014.

*[Signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties